NEWBERRY *v.* SMITH.

1. PUBLIC OFFICERS—SALARY—REMOVAL.

A member of a municipal police force, appointed under charter provisions which limit the right of removal and suspension to cause assigned, after hearing and notice, is entitled to his salary during the period of a suspension without hearing or notice, and pending his trial and acquittal upon a criminal charge.

2. SAME.

The emoluments of such police officer belong to him as an incident of his office, not by force of contract.

Certiorari to Wayne; Donovan, J. Submitted March 2, 1909. (Calendar No. 23,253.) Decided June 7, 1909.

Mandamus by Frank A. Newberry to compel Fred W. Smith, commissioner of police of the city of Detroit, to audit and allow a claim for services. From an order denying the writ, relator brings certiorari. Reversed, and writ granted.

*Frazer, Griswold & Slyfield,* for relator.

*George P. Codd,* for respondent.

BROOKE, J. The relator in this case seeks to secure a mandamus against the respondent, commanding him to allow, audit, and certify to the controller of the city of Detroit, and to issue, or to cause to be issued, to the relator, a lawful warrant or voucher for the sum of $875. The relator is now, and has been for many years, connected with the metropolitan police of the city of Detroit. The respondent is the police commissioner of said city. On the 30th day of December, 1905, relator was promoted to the grade of captain. He entered upon the duties of that office and continued to perform the same up to the 13th

day of May, 1908, on which date relator, with one Frank
B. Hibbler, was charged with the offense of conspiring
together to compound a felony—that is, to refrain from
prosecuting a certain woman, Annie Smith, for the offense
of keeping and maintaining a house of ill fame resorted to
for the purposes of prostitution and lewdness—and a
police court warrant issued against relator and said Hib-
bler. Immediately upon the issuing of said warrant, on
or about the 13th of May, 1908, relator was officially sus-
pended from active duty under and by virtue of an order
made by the superintendent of police, John Downey, by
and with the consent and approval of Fred W. Smith,
commissioner of police, respondent, pending a hearing on
the complaint made and a warrant issued in the police
court. On May 22, 1908, Christopher E. Stein, one of the
police justices of the city of Detroit, held relator and said
Hibbler for trial to the recorder's court of the city of De-
troit. On November 26, 1908, relator, after a trial in said
recorder's court, was acquitted of said charge by a jury.
On December 8, 1908, relator made a demand upon the
police commissioner, respondent herein, as follows:

"To HONORABLE FRED W. SMITH,
    "Commissioner of Police of the City of Detroit,
                            "Detroit, Michigan.
    "*Sir:* Formal demand is hereby respectfully made
that you in your official capacity as commissioner of police
of the city of Detroit, do allow, audit and certify to the
controller and direct the payment to the undersigned of
compensation and salary due to him as a captain of the
metropolitan police of the city of Detroit for the period of
time between the first day of May, A. D. 1908, and the
first day of December, A. D. 1908, the same amounting
to the sum of eight hundred seventy-five dollars ($875.00).
                    "Very respectfully,
                            "FRANK A. NEWBERRY.
    "Dated, December 8th, 1908."

The respondent refused to allow, audit, and certify to
the controller and direct the payment of said sum of $875.

The charter provisions touching the duties and powers

of the police commissioner relative to the matter under consideration are as follows:

"The commissioner of police and secretary of such department shall certify to the controller all pay rolls of the department allowed by said commissioner, and the city controller shall draw his warrant on the city treasurer for the amount thereof, and shall transmit said rolls to said city treasurer, together with such warrant, and the city treasurer shall pay to the several persons named in said roll the amount due to them and named in said roll." Detroit Charter (1904), § 680.

"Said commissioner shall also have power, for cause assigned and on a public hearing and on due notice, according to rules which shall be promulgated, to remove and suspend from office, or for a definite time to deprive of pay, any member of such police force." *Id.* § 662.

"If on such trial such charges or complaints shall be sustained, such officer or policeman shall pay the costs of such proceedings, and the same may be deducted and withheld from his pay, and in case of his suspension his pay shall also cease from the date of the charge and during the suspension." *Id.* § 667.

It appears from the record that on the 2d day of December, 1908, by a general order, the respondent reduced the relator in rank from captain to patrolman, and that said reduction in rank and salary was made without written charges being preferred against the relator or any trial had thereon. The relator's petition in the circuit court prayed that a mandamus issue likewise commanding the respondent to reinstate him to his grade of captain, together with the salary, rights, privileges, and obligations incident to such rank. This last contention of the relator was abandoned in the circuit court, and is not urged here.

An examination of sections 662 and 680 of the city charter leads to the conclusion that there is undoubted authority in the police commissioner to prefer charges against any official of the department, and after a public hearing on due notice, to determine the guilt or innocence of such officer, and, if found guilty by him, the commis-

sioner, of the charges assigned, he, the commissioner, may lawfully withhold the pay of the officer during his suspension. We do not think that this right can be exercised by the commissioner except upon cause assigned, after hearing on due notice, and a determination of the guilt of the officer so charged. An examination of the petition and answer leads to the conclusion that the criminal charges made against petitioner were adopted by the commissioner as the basis of the suspension, and that his acquittal upon those charges removed the reasons for such suspension. Upon his acquittal, the respondent treated him as entitled to restoration to his office on account of such acquittal, but reduced him to the rank of patrolman for another offense. Under this state of facts, we are of opinion that relator was entitled to his salary during the period of suspension. The emoluments of a police officer belong to the officer as an incident of his office —not by force of any contract, but because the law attaches it to the office. See *Wilkinson* v. *Saginaw Common Council*, 111 Mich. 586 (70 N. W. 142); *Carney* v. *Whelan*, 147 Mich. 19 (110 N. W. 128). See, also, *People, ex rel. Nugent*, v. *Police Commissioners*, 114 N. Y. 245 (21 N. E. 421); *Emmitt* v. *Mayor, etc., of New York*, 128 N. Y. 117 (28 N. E. 19). The learned circuit judge, as stated in his opinion, relied upon the case of *Wilkinson* v. *Saginaw Common Council, supra*. That case is clearly distinguishable from the one at bar by reason of the difference in the charter provisions of the city of Saginaw and those of the city of Detroit. We find no provisions in the city charter requiring the commissioner of police to furnish an affidavit to the controller. The charter provides as follows:

" The commissioner of police and secretary of such department shall certify to the controller all pay rolls of the department allowed by said commissioner, and the city controller shall draw his warrant on the city treasurer for the amount thereof, and shall transmit said rolls to said city treasurer, together with such warrant, and the city treas-

urer shall pay to the several persons named in said roll the amount due to them and named in said roll." Detroit Charter (1904), § 680.

The order and judgment of the circuit court denying relator's application for mandamus is reversed, and the writ will issue as prayed.

BLAIR, C. J., and GRANT, MONTGOMERY, and OS-TRANDER, JJ., concurred.