[Civ. No. 24891. Second Dist., Div. Three. Sept. 7, 1961.]

RUDOLPH RIVAS, Appellant, v. THE COUNTY OF LOS
ANGELES, Respondent.

Mullendore & Peetris for Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Respondent.

BISHOP, J. pro tem.*—The plaintiff has appealed from a judgment denying him any relief, entered after a demurrer was sustained to his complaint without leave to amend. That which the plaintiff sought to recover was the compensation that he would have received had he continued to be active as a deputy marshal in the office of Marshal of Municipal Courts, Los Angeles County, but which was not paid him because, rendered incapable of discharging his duties due to an automobile accident that did not arise in the performance of those duties, he was absent from his post from November 26, 1956, until he resigned March 12, 1959. Stated more accurately, that which the plaintiff sought to recover was his compensation from August 1, 1957, until his resignation, for he was paid, in full, for the period between November 26 and August 1. We are affirming the judgment.

*Assigned by Chairman of Judicial Council.

The issue before us is, of course, a legal one, and we find it sharply drawn. The premise of plaintiff's position is that he was a public officer and as such entitled to the compensation fixed by the Legislature, for the position he held, as an incident of the title to the office, and not to be measured by the time he put in nor denied him if he rendered no service at all. In support of this proposition plaintiff cites *Chubbuck* v. *Wilson* (1907), 151 Cal. 162, 164 [90 P. 524, 12 Ann.Cas. 888]; *Derrick* v. *City of Vallejo* (1935), 4 Cal.App.2d 25, 28 [40 P.2d 949, 951]; and *City of Oakland* v. *Lyckberg* (1928), 95 Cal.App. 71, 73 [272 P. 606]. Without questioning the premise, as a sound general statement of the law, the defendant answers that this common-law rule—that compensation is an incident of the title to the office—has, in the present case been drastically modified by the ''Personnel Regulations for the office of Marshal,'' adopted, according to the complaint, June 12, 1957. The question is thus presented: Was the plaintiff properly dropped from the Marshal's payroll because of the application of the regulations?

The regulations provide, first of all, for vacations with pay, under several conditions. Then come provisions covering the extent of leave, with pay, for sickness or injury, nonservice connected. As far as we should have them before us they read: ''1. *Compensation received.* Whenever any member receiving a monthly salary has completed six (6) months of continuous service and is compelled to be absent because of his sickness or injury, he shall receive compensation in accordance with the following provisions:

| (a) Years of service (Class) | Days at full pay |
|---|---|
| Under six months | 0 |
| Over 6 months | 1 day per month |
| 1 yr. to 5 yrs. | 15 days per year'' |
| etc. | |

At the time the regulations took effect, the plaintiff had been absent from duty for over six months. He was appointed ''on or about November, 1953,'' so he had been serving some three years, when the accident occurred that incapacitated him, and under the regulations, was entitled to 45 days' absence with pay, after his injury. As he was not separated from the payroll until August 1, which was more than 45 days after the regulations took effect, it is evidence that the six months' period when he was not working, but at a time

that the regulations were not in effect, was not taken into consideration, and does not complicate our problem.

These regulations were adopted by the judges of the Municipal courts of Los Angeles County. Are they valid? The answer to this question would be reached more easily if some provision of the Constitution, or a provision of the Government Code, explicitly provided that the municipal judges of a county could prescribe the rules regulating vacations and sick leave. The fact that we can point to no such explicit provision does not mean, however, that the authority does not exist. We begin with some provisions taken from two sections of the Government Code. We quote, first, a portion of the opening sentence of the third paragraph of section 72002.1: "It shall be competent for the judge or a majority of the judges of any municipal court to adopt rules for the conduct of, and personnel privileges to be afforded, the personnel of their court; or for a majority of all of the municipal court judges in a county, convened from time to time by the presiding judge of the municipal court district which embraces the county seat to adopt uniform rules for such purposes relative to the personnel serving the municipal courts in such county; . . ." Section 72643 contains these provisions, limited in their application to "The judges of all the municipal courts in Los Angeles County . . . . Said judges may prescribe and regulate by majority vote the organization, policies, rules, and regulations for the conduct of the marshal and his office; and it shall be his duty and that of the personnel of his office to be governed thereby. . . ."

For the philosophy that governs the relation of a court and its attachés, we turn to *Millholen* v. *Riley* (1930), 211 Cal. 29 [293 P. 69]. The plaintiff in that case had been appointed by the District Court of Appeal, Second Appellate District, as its secretary, and she sought the compensation that had been fixed by order of that court. We find of interest these passages of an opinion written in support of the conclusion that a writ of mandate should issue. "If the authority to appoint and fix compensation of persons in the category of petitioner is not lodged elsewhere by some other provision of the law, it seems too clear for argument that the court itself, in aid of the duty enjoined upon it by law, has both the power of appointment and the power of fixing compensation." (211 Cal. 31 [293 P. 70].) "A court set up by the Constitution has within it the power of self-preservation, indeed, the power to remove all obstructions to its successful and

convenient operation. . . . But if the legislature or the Constitution should fail to provide such persons, a court invested with jurisdiction would have all the powers necessary to its convenient exercise and could appoint such assistants as might be required." (211 Cal. 33, 34 [293 P. 71].) "It is now well settled that the legislature, in conferring the authority upon a bureau, court or officer to fix in its discretion the compensation of persons upon whom the duty of carrying out some duly authorized governmental object has been cast, is not thereby delegating legislative power to another but in reality is authorizing but an executive act." (211 Cal. 35 [293 P. 71].)

Among the quotations appearing in the opinion from which we have just quoted is one from *Nicholl* v. *Koster* (1910), 157 Cal. 416, 423 [108 P. 302, 305]. We find apt these additional words taken from that case: "The legislature may indeed provide for the appointment of such assistants of the court by the executive department, or by election of the people, and thus relieve the court of the burden of choosing such persons. But if the legislature or the constitution should fail to provide such persons, a court invested with jurisdiction would have all the powers necessary to its convenient exercise and could appoint such assistants as might be required. And doubtless the legislature can authorize the court to appoint such assistants. Instances are not wanting. The supreme court is authorized to appoint bailiffs, secretaries, phonographic reporters, a librarian, and janitors. (Code Civ. Proc., §§ 47, 265; Pol. Code, §§ 769, 2314.) The district courts of appeal are authorized to appoint a stenographer and a bailiff. (Pol. Code, § 758.) These powers are not given to the courts by the constitution. They have never been considered a part of the functions of the executive department of the state. The judges of the superior courts appoint receivers, referees, phonographic reporters, and guardians, each of whom may be said to be assistants of the court, necessary to the exercise of its jurisdiction. The functions of these probation officers are in some respects similar to those of guardians, in others like those of a bailiff or sheriff, and in others not unlike those of an attorney. The appointment of persons to discharge such duties is clearly not a necessary part of the functions of the executive department of the state government." (157 Cal. 423, 424 [108 P. 305].)

At the time the plaintiff became incapacitated to render service as a deputy marshal, there were 175 such deputies

authorized and their compensation fixed by legislative action. (Gov. Code, §§ 72646 and 72649.) The Legislature had not prescribed the conditions under which those deputies could be absent from their duties and still draw down their full compensation, but neither had it put any restriction upon the power of the judges, acting administratively, to protect the public purse by providing that some time limitation be imposed on vacations with full pay and absence because of injury without absence from the payroll. The judges had been expressly authorized to adopt rules governing the ''personnel privileges to be afforded'' the personnel of their courts. This, fortified by the inherent power that we have seen that they possessed, affords a firm foundation for the restrictions of which the plaintiff complains.

Plainly, the authority conferred by the Legislature to adopt the rules, as we have construed that authority, was not an unlawful delegation of a legislative function. As stated in *Meyer* v. *Riley* (1934), 2 Cal.2d 39, 41 [38 P.2d 405, 406] : ''That the point as to unlawful delegation is not well taken is indicated, with supporting authorities, in *Millholen* v. *Riley*, 211 Cal. 29, at page 35 [293 P. 69].'' As obviously, the regulations are not inoperative as to the plaintiff because he received his appointment before they were adopted. As already noted, they were not applied to cut him from the payroll as though they applied to his absence from duty prior to their adoption. He had no vested right to have the terms of his employment continue untouched.

''It is well settled that public employees have no vested right in any particular measure of compensation or benefits, and that these may be modified or reduced by the proper statutory authority. [Citing cases.]'' (*Butterworth* v. *Boyd* (1938), 12 Cal.2d 140, 150 [82 P.2d 434, 439, 126 A.L.R. 838].) ''Appellant did not have a vested right to any specific amount of salary.'' (*Gilmore* v. *Personnel Board* (1958), 161 Cal.App.2d 439, 449 [326 P.2d 874, 880].)

We agree with the conclusion of the trial court that plaintiff made it plain in his complaint that he had no further compensation due him.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.